UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED WOOD PRODUCTS COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>TRI-STATE CONSTRUCTION, INC., a Washington Corporation, and the CITY OF EVERETT, WASHINGTON, a municipal corporation<br><br>Defendants. | No. C04-2052Z<br><br>ORDER |

This matter comes before the Court on Defendant Tri-State Construction, Inc.'s motion to dismiss. For the reasons outlined herein, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion for Dismissal Pursuant to Fed. R. Civ. P. 12(c) and/or Summary Judgment Pursuant to Fed. R. Civ. P. 56, docket no. 21.

# I. BACKGROUND

This lawsuit arises out of a municipal construction project that was part of a larger public/private environmental project; the Port Gardner Outfall Replacement Project. Camp Decl., docket no. 20, Ex. A. The purpose of the replacement project was to replace Kimberly-Clark Corporation's ("Kimberly-Clark's") existing outfall through a program that would combine its treated process wastewater together with a portion of the City of Everett's treated municipal wastewater and discharge it into a single deep water outfall in Port Gardner Bay. Id. at p. 1. On April 16, 2003, Defendant Tri-State Construction, Inc. ("TSI") and the

ORDER 1–

City of Everett signed a contract for construction of an on-shore pipeline as part of the Port Gardner project. Sharples Decl., docket no. 22, Ex. A (hereinafter the "Public Works Contract"). The Public Works Contract required TSI to install a 42 inch diameter pipe at a location specified by the City, which for the most part followed the center line of Railway Avenue West in Everett. Id. at ¶ 5. This contract contains the following language:

> Repair of Damage. The Contractor [TSI] agrees to repair and replace all property of the City and all property of others damaged by it, its employees, subcontractors, suppliers and agents.

Id. at Ex. A, ¶ 11. It includes by reference standard specifications, including section 1-07.23 entitled "Construction Under Traffic" which provides specific requirements for the following street:

> Kimberly-Clark Riverside Operations Facility Access Road - Contact Mike Thorp/Kimberly Clark . . . or Sam Cover/Kimberly Clark . . . a minimum of 14 days in advance of access and work in this area. Provide signals and flaggers as required to redirect vehicular traffic to alternate access points. The road may be closed for brief periods as required for the work and approved by the OWNER [City of Everett] and Kimberly Clark.

Plaintiff's Opposition Brief, docket no. 24, Ex. 2, p. 7. It is the closure of this access road and TSI's activities during construction of the pipeline in this area that serve as the primary basis for the claims in this case. See Amended Complaint, docket no. 18, ¶¶ 9-18, 21, 24, 27.

On August 1, 2003, Kimberly-Clark and Plaintiff, United Wood Products Company ("United Wood"), entered into a wood fuel supply and services agreement. Plaintiff's Opposition Brief, docket no. 24, Ex. 3. As part of this agreement, Kimberly-Clark leased to Plaintiff an office building and an acre of land at 4000 Railway Avenue, in Everett, Washington, to use during Plaintiff's performance of the service agreement. Id. at Ex. 5. In addition, Kimberly-Clark agreed to the future sale of a portion of its Riverside Operations property to Plaintiff; however, the services agreement was terminated before the sale became final. Id. at Ex. 4. There is only one paved access road to this property, the Kimberly-Clark Riverside Operations Facility Access Road mentioned in the Public Works Contract, which

ORDER  2–

enters the property on the western side from Railway Avenue West. Sharples Decl., docket no. 22, ¶7; Nedderman Decl., docket no. 23, Ex. A (Winters Dep., p. 27, lns. 15-20). The only other access to the property is an unpaved road entering on the eastern side from Railway Avenue East. Id. at p. 22, lns. 21-23; p. 24, lns. 18-21.

On September 1, 2003, United Wood began performance on a requirements contract with Kimberly-Clark, supplying "hog fuel," or ground wood, to Kimberly-Clark's Everett Mill facility. Id. at p. 8, lns. 15-18; p. 9, lns. 12-13, 22-25; p. 10, lns. 1-2. Plaintiff obtained this fuel from other hog fuel suppliers who delivered product to United Wood's Everett site. Id. at p. 37, lns. 20-25; p. 38. Plaintiff also created its own inventory by grinding up old railroad ties delivered to it via the rail spur located to the north of its property. Id. at p. 275, lns. 9-15. Hog fuel was then loaded onto Plaintiff's trucks and delivered to Kimberly-Clark. Id. at p. 42, lns. 5-7. Kimberly Clark paid United Wood based upon the weight of product delivered and the contract provided for penalties if its fuel requirements were not met, including the cost of substitute fuel required to keep Kimberly-Clark's boilers running. Id. at p. 40, lns. 19-24; p. 262, lns. 14-19.

TSI began work on the pipeline in the area of United Wood's site at the end of October 2003, and the pipeline was installed under Railway Avenue West according to the City's specifications. Sharples Decl., docket no. 22, ¶¶ 12-16, 28-30. TSI claims that it was not physically possible to install the pipeline under the paved portion of Railway Avenue without removing the existing roadway. Id. at ¶12. United Wood has offered no evidence to dispute this claim. In December, 2003, the access road entrance to United Wood's property was closed for two weeks. Nedderman Decl., docket no. 23, Ex. A (Winters Dep., p. 28, lns. 11-22). The schedule and duration of the closing of this road were discussed with and approved by the City of Everett and Kimberly-Clark before United Wood took any interest in the property. Sharples Decl., docket no. 22, ¶ 16. At the time of signing its agreements with Kimberly-Clark, United Wood knew that Railway Avenue was a public street and that the

ORDER  3–

access road was not part of the use or purchase agreement with Kimberly-Clark. Nedderman Decl., docket no. 23, Ex. A (Winters Dep., p. 22, lns. 15-23). Although TSI had not yet begun construction of the pipeline at the time Plaintiff signed the agreements, United Wood was informed during contract negotiations that TSI would be installing a pipeline on land near the property. Id. at p. 26, lns. 8-25; p. 27, lns. 1-4. Plaintiff was assured by Kimberly-Clark that the road would always have one-lane access and had no contact with the City or TSI regarding the closure of the road. Id. at p. 26, lns. 20-25; p. 27, lns. 1-4; p. 62, lns. 19-25; p. 63, lns. 1-7. Mr. Darrel Winters, Managing Director of United Wood at the time of the events of this action, testified that United Wood became aware of the closure only when TSI had dug the road up and trucks were no longer able to enter the property at the west entrance. Id. at p. 4, lns. 20-23; p. 26, lns. 20-25; p. 40, lns. 6-18; p. 63, lns. 8-11. Closure of the access road resulted in increased truck traffic over private roads on the United Wood site, greatly decreased United Wood's productivity, and had serious adverse effects on its business operations. Id. at p. 91, lns. 4-16.

Mr. Winters claims that other neighboring businesses did not lose access to Railway Avenue West during construction because TSI built temporary roads which permitted continued access to their property. Id. at p. 59, lns. 6-22. TSI claims that it was not possible to create a detour around the dug up roadway at this location because the area was bounded on the west by the rail line and on the right by private property. Sharples Decl., docket no. 22, ¶ 13. During construction, Railway Avenue East was never closed off completely and alternative access to United Wood's site via this road was maintained at all times. Id. at ¶ 15; Nedderman Decl., docket no. 23, Ex. A (Winters Dep., p. 190, lns. 21-25; p. 191, lns. 1-14; p. 193, lns. 16-20). United Wood has offered no evidence as to whether the road could have been closed for a shorter length of time in order for the pipeline to be installed. Id. at p. 89, lns. 19-25; p. 90, lns. 1-7. On July 19, 2004, the City issued its certificate of final completion certifying that the work was "constructed per the plans and specifications and to

ORDER  4–

the satisfaction of the Public Works Department" and that the "contractor physically completed the project within the time allowed in the contract." Sharples Decl., docket no. 22, ¶ 30; Ex. D.

United Wood now seeks to recover a variety of damages it alleges were caused by closure of the access road and TSI's actions during the construction. These damages include: (1) costs of repairing and replacing property allegedly damaged by TSI during construction; (2) costs of repairing and replacing property and equipment arising from closure of the access road and the construction as a whole; and (3) costs of lost productivity and profits arising from closure of the road and TSI's activities during construction. Amended Complaint, docket no. 18, ¶ 18.

### A. Costs of Repairing and Replacing Property Allegedly Damaged by TSI During Construction

United Wood and TSI dispute whether TSI is responsible for flooding damage to the property caused by a broken water pipe and clogged drains. At some point during the construction, a water pipe carrying water onto the property was broken, allegedly causing a sink hole to develop near United Wood's scale house and leaving standing water on the ground. Nedderman Decl., docket no. 23, Ex. A (Winters Dep., p. 121, lns. 19-25; p. 122, lns. 6-13; p. 147, lns. 5-21; p. 216, lns. 1-7; p. 232, lns. 5-10, 18-22). The parties dispute whether TSI trucks were the only vehicles driving over the road above this water pipe at the time the pipe was broken. Id. at p. 102, lns. 20-25; p. 103; p. 104, lns. 1-15; p. 122, lns. 7-13; p. 123, lns. 3-16; Sharples Decl., docket no. 22, ¶ 26. In addition, United Wood claims that TSI employee vehicles and heavy equipment were parked on United Wood property near the scale house without permission. Nedderman Decl., docket no. 23, Ex. A (Winters Dep., p. 95, lns. 7-15; p. 99, lns. 12-25; p. 100, lns. 1-4; p. 101, lns. 15-25; p.102, lns. 1-19). TSI admits that its employees parked their vehicles on United Wood property without permission. Sharples Decl., docket no. 22, ¶ 24.

ORDER  5–

The parties also dispute whether TSI's activities directly caused drain pipes on and surrounding the property to become clogged, which led to flooding and repair costs. Nedderman Decl., docket no. 23, Ex. A (Winters Dep., p. 141, lns. 16-21; p. 142, lns. 4-24; p. 144, lns. 1-22; p. 145-150; p. 196, lns. 2-8, 14-25; p. 197, lns. 1-13; p. 203, lns. 13-25; p. 204, lns. 1-2). United Wood blames the construction activity as well as the increased traffic on the property as a whole for clogging of the drains and the subsequent flooding damage. Id. TSI claims that the property commonly flooded during the winter months and that debris from United Wood's operations is responsible for clogging the pipes. Sharples Decl., docket no. 22, ¶ 18, 22. However, TSI does admit to performing work on one of United Wood's drains. Id. at ¶ 19. TSI claims that it discovered the damaged drainpipe during the course of the construction and repaired the drainage pipe because it ran under the construction site. Id. TSI claims that the drainpipe was in a very deteriorated state prior to any pipeline activities. Id.

Finally, the parties dispute whether TSI damaged United Wood's weigh scale by driving a heavy truck over the scale. TSI claims that United Wood cannot show what damage, if any, was a result of the heavy truck passing over the scale and what damage was caused by the excessive deposit of debris and mud under the scale by United Wood's own trucks and supplier trucks. Nedderman Decl., docket no. 23, Ex. A (Winters Dep., p. 96, lns. 7-12; p. 104, ln. 25; p. 105, lns. 1-16; p. 110, lns. 6-24). The weigh scale was closed for an afternoon to be cleaned and re-calibrated and United Wood lost profits from its public weigh scale business during this closure and during the construction period as a whole due to decreased traffic. Id. at p.124, lns. 14-25; p. 125, lns. 1-15, 21-25; p. 128, lns. 8-10.

**B.    Costs of Repairing and Replacing Property and Equipment Arising From Closure of the Access Road and Construction of the Pipeline**

United Wood seeks to recover property and equipment it claims were damaged due to the closure of the only paved access road to its property. Prior to the paved entrance being closed down, trucks would enter the United Wood property at the western access road. Id. at

ORDER   6–

p. 36, lns. 13-24. Upon closure of the road, Plaintiff's employees decided to re-route supply trucks and its own delivery trucks to the unpaved east side entrance and along an alternative unpaved route across the property to the weigh scale. Id. at p. 45, lns. 23-25; p. 46, lns. 1-10, 25; p. 47, lns. 1-9; p. 65, lns. 9-20; p. 74, lns. 24-25; p. 75, lns. 1-24. This was done in order to continue weighing these trucks and maintain deliveries to Kimberly-Clark. Id. United Wood bought gravel and laid rock on this alternate route during the course of the construction. Id. at p. 34, lns, 1-8, 22-24; p. 35, lns. 1-14. The alternate route required incoming and outgoing trucks to drive over the Plaintiff's hog-fuel inventory pile to reach the weigh scale. Id. at p. 46, lns. 12-15; p. 47, lns. 10-25; p. 48. Plaintiff was aware that directing trucks to drive over the pile would likely damage the inventory making it unusable. Id. at p. 65, lns. 9-20; p. 74, lns. 24-25; p. 75, lns. 1-24. In addition, use of the alternate route required United Wood to repair many of its own trucks damaged as a result of using the unpaved roads. Id. at p. 225, lns. 2-12; p. 240, lns. 2-25; p. 241, lns. 2-10. United Wood also claims that increased traffic along this alternate route caused a rail spur located on its property to sink, requiring repair and leading to the delay of railroad ties to be ground for inventory. Id. at p. 204, lns. 14-25; ps. 205-206.

Finally, United Wood also claims that it incurred increased employee overtime cost in order to maintain its operations, repair its equipment, clean its weigh scale, and build a new loading berm. Id. at ps. 271, 272, 273, lns. 1-12. Plaintiff seeks to recover the costs of maintaining the alternate truck route, repairing the private roads on its property damaged by the increased truck traffic, inventory damaged from use of the alternate route, repairing the rail spur and the inventory lost from closure of the spur, and repairing its trucks damaged as a result of driving over the alternate route. Id. at p. 224, lns. 22-25; p. 225, lns. 1-11; p. 275, lns. 7-19.

**C.     Lost Productivity and Lost Profits**

ORDER  7–

United Wood seeks to recover for the "stand-by" time charged by its suppliers' trucks when the trucks were forced to wait to unload during delays caused by use of the alternative truck route and equipment damage. Id. at p. 274, lns. 10-25; p. 275, lns. 1-6. Plaintiff also seeks to recover the cost of hiring additional outside trucks to deliver hog fuel to Kimberly-Clark in an effort to maintain the pre-construction productivity level of an average eight truck trips per eight-hour period. Id. at p. 258, lns. 9-20; p. 259, lns. 7-21. Decreases in productivity and a shortfall in inventory arising from its suppliers' refusal to deliver during construction led United Wood to purchase hog-fuel from a Canadian company to meet Kimberly-Clark's requirements. Id. at p.42, lns. 5-13; p. 43, lns. 14-25; p. 44, lns. 1-12; p. 262, lns. 14-25; p. 263, lns. 1-14; pgs. 264-268. Despite these efforts to maintain productivity and supply, United Wood failed to meet Kimberly-Clark's fuel requirements and was charged for substitute fuel, natural gas and diesel, under the terms of its agreement with Kimberly Clark. Id. at p. 262, lns. 14-25; p. 263, lns. 1-14. United Wood seeks to recover all of these costs as well. Amended Complaint, docket no. 18, ¶ 18.

## II. DISCUSSION

### A. Defendant TSI's Motion to Strike

Defendant moves to strike all exhibits attached to the Plaintiff's Opposition Brief, docket no. 24, because they are inadequately authenticated. The Court GRANTS the motion to strike as to Exhibits 1, 8, 9, 10, and 11 because Plaintiff has offered no testimony to show that these exhibits are true and accurate representations of what they allegedly depict; the property damage suffered at Plaintiff's Everett site. The motion to strike is DENIED as to Exhibits 2, 3, 4, 5, 6, 7, 12, 13 and 14 because any authentication issues have been resolved by Plaintiff's filing of its supplemental declaration, docket no. 27.

### B. Defendant TSI's Motion to Dismiss

Defendant TSI moves pursuant to Fed. R. Civ. P. 12(c) to dismiss all of Plaintiff's claims. Defendant TSI concedes that it is responsible for repairing and replacing any of the

1  Plaintiff's property that TSI damaged during construction of the pipeline.  See Defendant's
2  Reply Brief, docket no. 26, pgs. 8-9.  However, TSI moves to dismiss all of Plaintiff's claims
3  arguing that as a matter of law United Wood cannot recover for the broad, purely economic
4  damages it is seeking under any of its liability theories.  TSI also argues that dismissal is
5  appropriate in this case because United Wood has failed to demonstrate that a genuine issue
6  of material fact exists as to whether TSI caused any of the property damage alleged in this
7  case.

### C. Standard of Review

A Fed R. Civ. P. 12(c) motion challenges the legal sufficiency of the opposing party's pleadings after the pleadings are closed.  See Honey v. Distelrath, 195 F.3d 531, 532 (9th Cir. 1999).  If matters outside of the pleadings are presented to and not excluded by the court on a motion for judgment on the pleadings, the motion shall be treated as one for summary judgment.  Fed. R. Civ. P. 12(c).  Here, as deposition testimony and other exhibits have been submitted with the parties' briefs, the Defendant's motion to dismiss will be treated as a motion for summary judgment.  Id.

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact, based on the evidence before the court.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party meets its initial responsibility, the burden shifts to the opposing party to establish that a genuine issue actually exists for a material fact.  See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Evidence submitted by the party opposing summary judgment is presumed valid, and all reasonable inferences that may be drawn from that evidence must be drawn in favor of the

ORDER  9–

party opposing summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

### D.     Plaintiff's Breach of Contract Claim

Defendant argues that United Wood's breach of contract claim should be dismissed as a matter of law because Plaintiff was not a party to the Public Works Contract and cannot show that it was an intended third party beneficiary. The creation of a third party beneficiary contract requires that both contracting parties intend that the promisor assume a direct obligation to the intended beneficiary at the time they enter into the contract. See Postlewait Construction, Inc. v. Great American Ins. Companies, 106 Wash.2d 96, 99 (1986). "[T]he test of intent is an objective one; the key is not whether the contracting parties had an altruistic motive or desire to benefit the third party, but rather, 'whether performance under the contract would necessarily and directly benefit' that party." Id. (internal citations omitted). The contracting parties' intent is determined by construing the terms of the contract as a whole, in light of the circumstances under which it was made. Id. at 99-100. Where there are no disputed material facts as to the intent of the parties, the contract will be construed by the court as a matter of law. Id. at 100.

Paragraph 11 of the Public Works Contract creates a duty of TSI to "repair and replace ... all property of others damaged by it, its employees, subcontractors, suppliers and agents." This language shows an intent by the City and TSI at the time that the contract was signed that TSI assume a direct obligation to non-party property owners to repair and replace property damaged by TSI during the course of the construction. This contractual language is undisputed by the parties and no facts are present showing that this language does not represent the intent of the parties as to obligations assumed by TSI to non-party property owners. The cases Defendant cites to support its arguments that Plaintiff was not a third

ORDER  10–

party beneficiary to the agreement are inapposite.  See, e.g., Del Guzzi Constr. v. Global Northwest Ltd., Inc., 105 Wash.2d 878 (1986) (contract clause requiring minority participation in order to receive federal funding not sufficient to show parties intended for promisor to assume a direct obligation to a subcontractor); Burke & Thomas, Inc. v. Int'l Organization of Masters, Mates & Pilots, West Coats and Pacific Region Inland Div. Branch 6, 92 Wash.2d 762, 767-68 (1979) (contract clause in collective bargaining agreement containing promise not to strike did not show parties intended promisor to assume a direct obligation to the general public not to strike).  For these reasons, the Court finds that United Wood was an intended third party beneficiary to the Public Works Contract.

However, with the exception of TSI's alleged breach of its contractual duty to repair and replace Plaintiff's property, United Wood has failed to show a genuine issue of material fact exists as to the other contractual breaches it claims in its complaint.  Thus, the Court DENIES the Defendant's motion to dismiss as to Plaintiff's breach of contract claim but limits this claim to those damages Plaintiff can show at trial arose from the alleged breach of TSI's contractual duty to repair and replace property it damaged during the course of construction under the Public Works Contract.

### E. **Plaintiff's Negligence Claim**

Defendant TSI argues that Plaintiff's negligence claim should be dismissed as a matter of law because Plaintiff is barred from recovering any of its economic losses in tort under Washington's economic loss rule.  Defendant does not dispute that it is responsible for repairing and replacing any property it negligently damaged during its construction activities.  See Defendant's Reply Brief, docket no. 26, pgs. 8-9.  Instead, Defendant disputes the proper measure of these damages under Washington law and argues that Plaintiff has failed to show a genuine issue of material fact exists as to whether Defendant actually caused any of the alleged property damages.

ORDER  11–

The "economic loss" rule prevents recovery of purely economic damages in tort. See Stuart v. Coldwell Banker Commercial Group, Inc., 109 Wash.2d 406, 420-21 (1987) (refusing to permit property owners not in privity of contract with the builder-vendor to recover purely economic damages in tort for construction defects). "The economic loss rule marks the fundamental boundary between the law of contracts, which is designed to enforce expectations created by agreement, and the law of torts, which is designed to protect citizens and their property by imposing a duty of reasonable care on others." Berschauer/Phillips Constr. Co. v. Seattle School Dist. No. 1, 124 Wash.2d 816, 821 (1994). Contract law permits recovery of direct, incidental, and consequential losses resulting from breach of a contract because such damages are presumed to be within the contemplation of the parties to the agreement. See id. at 826-27; see also Hofstee v. Dow, 109 Wash.App. 537, 543-44 (2001) (discussing the application of the economic loss rule in product liability cases). In contrast, tort law is traditionally concerned with the obligations imposed by law rather than by bargain. Id. at 543. Under tort law, a party is liable for actions creating an unreasonable risk of harm to property, but not for purely economic harm. Id.

Defendant asks this Court to apply one of the tests used in Washington product liability cases and find that the broad economic damages claimed in this case are excluded under the economic loss rule. In product liability cases, Washington courts have adopted a risk of harm analysis to resolve whether particular damages are recoverable or excluded by the economic loss rule. Id. at 544. There are two tests under the risk of harm analysis: a "sudden and dangerous test" and an "evaluative approach." Id. Neither test has been approved by the Washington Supreme Court. Id.; see also Touchet Valley Grain Growers, Inc. v. Opp & Seibold General Constr., 119 Wash.2d 334, 350-55 (1992) (acknowledging and applying both risk of harm tests but refusing to decide which approach was preferable in product liability cases where the parties had not briefed the issue). The "sudden and dangerous" test examines the manner in which the product failure occurred. Hofstee, 109

ORDER 12–

Wash.App. at 545. If the failure was a sudden and dangerous event, it constitutes a tort and property damage resulting from the event is recoverable but economic losses are not. Id. The "evaluative approach" expands the analysis to include the nature of the defect and the type of risk as well as the manner in which the injury arose. Id.

The Court finds that the economic loss rule is applicable to this case. The Court will apply the economic loss rule at trial, but DEFERS until trial as to which risk of harm test will be applied. The Court finds that under either test, there are material issues of fact as to what claimed damages should be excluded under the rule. Finally, the Court finds that there are genuine issues of material fact as to whether TSI caused the alleged property damage in this case. For these reasons, the Court DENIES the Defendant's motion for summary judgment on the Plaintiff's negligence claim.

### F.  Plaintiff's Trespass Claim

Defendant moves for summary judgment on Plaintiff's trespass claim arguing that Plaintiff cannot bootstrap all of its economic losses onto a trespass claim. The elements of the tort of trespass are the intentional or negligent intrusion onto or into the property of another by the defendant. See Phillips v. King County, 87 Wash.App. 468, 490 (1997). The Court finds that there is a genuine issue of material fact as to whether Defendant intentionally or negligently intruded onto the Plaintiff's property and what damages resulted from this intrusion. For these reasons, the Court DENIES the Defendant's motion for summary judgment as to Plaintiff's trespass claims with damages to be determined at trial.

### G.  Plaintiff's Nuisance Claim

Defendant moves for summary judgment on Plaintiff's nuisance claim arguing that Washington law does not recognize a nuisance claim arising out of alleged negligence where negligence is also claimed in the complaint. Nuisance involves the wrongful invasion of the use and enjoyment of property. See Hostetler v. Ward, 41 Wash.App. 343, 355-356 (1985) (citing Wash. Rev. Code. § 7.48.150 (private nuisances defined)). A defendant's liability for

ORDER  13–

nuisance depends on "the type of his wrongful conduct with respect to the right or interest invaded." Id. at 357. Where a nuisance is allegedly the result of negligence, the rules of negligence apply and the court need not consider the two claims separately. See id. at 360. In this case, Plaintiff's nuisance claim is not limited on its face to negligent acts. See First Amended Complaint, docket no. 18, ¶ 24. In addition, the Court finds that there is a genuine issue of material fact as to whether the Defendant's intentional actions in this case amounted to a wrongful invasion of United Wood's use and enjoyment of its property. See Hostetler, 41 Wash.App. at 356. For these reasons, the Court DENIES the Defendant's motion for summary judgment as to Plaintiff's nuisance claim.

### H. Defendant TSI's Request for Discovery Sanctions

Defendant moves for sanctions in its motion for summary judgment asking the Court to sanction United Wood for producing an unprepared Fed. R. Civ. P. 30(b)(6) witness. "A corporation has a duty to prepare its deposition designees so they can give full, complete and non-evasive answers." See Casper v. Esteb Enterprises, Inc., 119 Wash.App. 759, 768-69 (2004). The Court finds that Plaintiff produced an unprepared Rule 30(b)(6) witness because Mr. Winters was unable to testify as to all matters included in the deposition notice. For these reasons, the Court ORDERS the Plaintiff to produce a witness within sixty days who will be prepared to testify as to all damage amounts claimed. Plaintiff is further ORDERED to pay costs and Defendant's reasonable attorney's fees for the deposition time necessary to take the supplemental deposition.

## III. CONCLUSION

For the reasons stated above, Defendant Tri-State Construction, Inc.'s Motion for Dismissal Pursuant to Fed. R. Civ. P. 12(c) and/or Summary Judgment Pursuant to Fed. R. Civ. P. 56, docket no. 21, is GRANTED IN PART and DENIED IN PART.

In addition, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion to Strike, contained within its Reply Brief, docket no. 26. The motion to strike is

ORDER  14–

GRANTED as to Exhibits 1, 8, 9, 10, and 11 attached to the Plaintiff's Opposition Brief, docket no. 24, and the Court STRIKES these exhibits.  The motion to strike is DENIED as to Exhibits 2, 3, 4, 5, 6, 7, 12, 13 and 14.

Finally, the Court GRANTS IN PART Defendant's Motion for Sanctions, contained within its Motion for Dismissal, docket no. 21.

IT IS SO ORDERED.

DATED this 9th day of May, 2005.

/s/ Thomas S. Zilly
Thomas S. Zilly
United States District Judge

ORDER   15–